# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| The Turtle Factory Building Corporation, ) | C/A. No. 2:19-976-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| ECS Southeast, LLP, ) | |
| ECS Carolinas, LLP, and ) | |
| ECS Corporate Services, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Before the Court is Defendant ECS Corporate Services, LLC ("ECS Corporate")'s motion for summary judgment (Dkt. No. 57). For the reasons set forth below, the Court grants ECS Corporate's motion.

**I.     Background[1]**

This case arises out of Plaintiff's purchase of 228 Meeting Street, Charleston, SC 29401 (the "Property") from non-party McGrath Real Estate Holdings, LLC. Plaintiff alleges that, in purchasing the Property, it relied on a property condition assessment report ("PCR") prepared by Defendant ECS Carolinas, LLP ("ECS Carolinas")[2]. *See* (Dkt. No. 58-6). Plaintiff alleges that the PCR contained inaccurate information about the Property. Plaintiff alleges that it was damaged because of, *inter alia*, its reliance on the PCR.

---

[1] All facts are viewed in a light most favorable to Plaintiff, the non-moving party.

[2] ECS Carolinas, LLP changed its name to ECS Southeast, LLP ("ECS Southeast") effective January 1, 2017 and the entity know as ECS Carolinas, LLP is no longer active in South Carolina and is a dissolved entity. (Dkt. No. 14).

Plaintiff brings four causes of action against ECS Carolinas, ECS Southeast, and ECS Corporate, including: (1) Amalgamation/Alter Ego/Mere Continuation; (2) Negligence/Gross Negligence; (3) Breach of Express and Implied Warranty; and (4) Breach of Contract. (Dkt. No. 1-1); *see* (Dkt. No. 65 at 4) ("Plaintiff alleges that Defendant ECS Corporate Services, LLC is liable . . . for its role within the 'ECS Group of Companies' as the entity responsible for training, staffing and supervision of Justin Weaver and Peter Domenico, maintaining corporate documents; as well as, under amalgamation, alter ego and/or corporate successor liability theory.").

ECS Corporate now moves for summary judgment on all of Plaintiff's claims, arguing it is a distinct legal entity that was not involved in the operative facts of this dispute. (Dkt. No. 57). Plaintiff opposes. (Dkt. No. 65). ECS Corporate filed a reply. (Dkt. No. 76).

ECS Corporate's motion is fully briefed and ripe for disposition.

**II.     Legal Standard**

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court interprets all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold*, *Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)); *Lilly v. Crum*, No. 2:19-CV-00189, 2020 WL 1879469, at *4 (S.D.W. Va. Apr. 15, 2020) (noting that the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to create a genuine dispute) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

### III. Discussion

ECS Corporate seeks summary judgment on all of Plaintiff's claims on the basis that no evidence exists to support Plaintiff's alter ago, amalgamation, and mere continuation claim. (Dkt. No. 57).

An amalgamation of interest analysis considers the relationship of the defendant corporations to their officers, directors, headquarters, employees, functions, written representations, and admissions of liability to determine whether there exists "an amalgamation of corporate interests, entities, and activities so as to blur the legal distinction between the corporations and their activities." *Magnolia North Property Owners' Ass'n v. Heritage Communities, Inc.*, 397 S.C. 348, 358-60, 725 S.E.2d 112, 117-18 (Ct. App. 2012); *Walbeck v. l'On Company, LLC*, 426 S.C. 494, 528 (Ct. App. 2019). "To establish corporate liability across multiple corporate entities, [however], a plaintiff must demonstrate 'more than the various entities' operations are intertwined.'" *Hofferth v. Janssen Pharms., Inc.*, No. 3:17-CV-01560-MGL, 2020 WL 1536218, at *9 (D.S.C. Mar. 31, 2020) (*citing Pertuis v. Front Roe Restaurants, Inc.*, 817 S.E.2d 273, 280 (S.C. 2018)). Rather, "[c]ombining multiple corporate entities into a single business enterprise requires further evidence of *bad faith, abuse, fraud, wrongdoing, or injustice* resulting from the blurring of the entities' legal distinctions." *Pertuis*, 817 S.E.2d at 281 (emphasis added).

In support of its motion, ECS Corporate first cites an affidavit provided by its General Counsel, Douglas Cole. Cole affirms that the PCR was performed solely by ECS Carolinas and that ECS Corporate "does not provide engineering services, is not licensed to perform those services, and its primary function is to oversee corporate, human resources, IT and general

3

management matters pursuant to a Master Services Agreement [the "MSA"] with Engineering Consulting Services, Ltd." (Dkt. No. 57-1 at 1-2).[3] Attached to Cole's affidavit is the affidavit of James Eckert, ECS Corporate Services' CFO. (Dkt. No. 57-1 at 4). Eckert attaches to his affidavit an unsigned copy of a Master Services Agreement which he affirms ECS Corporate "ha[s] been operating under since 2005 and which serves to guide the services ECS Corporate Services, LLC provides to the operating subsidiaries." (*Id.*) (stating that "I recall the agreement being signed but cannot locate that copy").

ECS Corporate then cites the deposition testimony of Jim Carpenter, Senior Vice President and Corporate Engineer, its Rule 30(b)(6) designee. Carpenter testified that ECS Corporate was a subsidiary of Engineering Consulting Services, Limited, and that ECS Corporate was, in turn, the "support subsidiary" to other regional subsidiaries such as ECS Carolinas. (Dkt. No. 57-2 at 2-3) ("Corporate Services is a support subsidiary, and then the other subsidiaries, Mid-Atlantic, Southeast, et cetera, are also subsidiaries of [Engineering Consulting Services, Limited]"). Carpenter testified that ECS Corporate provides accounting, human resources, legal, and IT services to said subsidiaries. (*Id.* at 4).

ECS Corporate then cites the deposition testimony of Peter Domenico, the engineer for ECS Southeast who performed the PCR. Domenico testified that he was "employed by ECS Southeast." (Dkt. No. 57-3 at 3) (testifying that Domenico was employed by "ECS Midwest followed by ECS Carolinas followed by ECS Southeast"). Domenico notes that he received different W2s for each ECS subsidiary he worked for. (*Id.*); (*Id.* at 4) (further testifying that ECS

---

[3] Jim Carpenter, the Rule 30(b)(6) deponent for each named Defendant, testified that Engineering Consulting Services, Limited is the holding company for, *inter alia*, ECS Corporate Services, ECS Southeast, and ECS Carolinas. (Dkt. No. 57-2 at 3).

4

Corporate "provided corporate services" such as "legal, accounting, [and] HR" for the ECS entities Domenico worked for).

Last, ECS Corporate attaches to its motion a W2 for Justin Weaver, another engineer involved with the PCR, showing ECS Carolinas as his employer. (Dkt. No. 57-4). *But see* (Dkt. No. 65 at 3) (contending that Weaver is "a field observer, not a licensed professional engineer").

Given the above, ECS Corporate concludes that Plaintiff is "unable to show an amalgamation of corporate interests, entities, and activities so as to blur the legal distinction between the ECS entities corporations and their activities in order to amalgamate them under a theory of the single business enterprise. Plaintiff has only shown that the entities share the letters 'ECS' in common, no more. Plaintiff has failed to provide evidence of bad faith, abuse, fraud, wrongdoing or injustice resulting from the blurring of the entities' legal distinction." (Dkt. No. 57 at 7).

In its response in opposition, Plaintiff does not seriously dispute or otherwise call into doubt the above cited facts. *See generally* (Dkt. No. 65). Plaintiff does argue, however, that ECS Corporate "failed to comply with its own corporate formalities in that there is no signed, written agreement establishing the scope of services it provided to ECS Carolinas, LLP in 2016 and no clear identification of its corporate officers and structure which would help distinguish it from any of the other ECS entities." (Dkt. No. 65 at 7) (citing the unsigned signature pages of the MSA and further citing—without any parenthetical explanation or pincites—ECS Corporate's responses to "Plaintiff's First Set of Interrogatories and Requests for Production" and "Plaintiff's First Supplemental Requests for Production"). Plaintiff also argues that because ECS Corporate states it provided human resource services to all ECS entities, ECS Corporate was thus responsible for Weaver's training regarding property condition assessments. *See* (*id.*) ("Jim Carpenter testified

that ECS Corporate, LLC provided HR services to all ECS entities, to include staffing which, but for the lack of documentation, is at the heart of Plaintiff's claims against ECS, the failure of Justin Weaver to properly conduct the Property Condition Assessment stems from an improper selection of Mr. Weaver to perform said PCA; as well as a failure to properly train and supervise Mr. Weaver.") (errors in original).[4]

The Court finds that ECS Corporate is entitled to summary judgment on all of Plaintiff's claims. Beyond mere speculation, Plaintiff has put forth no record evidence to show ECS Corporate was involved with the PCR. And beyond stating in a conclusory manner that "ECS Corporate Services, LLC is part of the whole that has cause [sic] the harm to the Plaintiff," (Dkt. No. 65 at 8) (arguing that "all Defendants appear to have the same address and utilize the same web address"), Plaintiff has put forth no evidence indicating bad faith, abuse, fraud, wrongdoing, or injustice resulting from an improper blurring of legal entities. *See Hofferth*, 2020 WL 1536218, at *9 (granting summary judgment as to one defendant on Plaintiff's "single business enterprise theory" claim noting "Hofferth has provided no evidence of any bad faith, abuse, fraud, wrongdoing, or injustice resulting from the blurring of the legal distinction between J&J and JJRD. It is commonplace for companies to establish multiple corporate entities, who maintain individual corporate identity despite close collaboration between the different entities"); *Pertuis*, 423 S.C. at 280-81 ("Combining multiple corporate entities into a single business enterprise requires further evidence of bad faith, abuse, fraud, wrongdoing, or injustice resulting from the blurring of the entities' legal distinctions.").

---

[4] Nowhere in Plaintiff's opposition does it cogently explain what it means by ECS Corporate's "failure . . . to maintain corporate documents" or how such a failure evidences a bad faith blurring of the various ECS entities.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant ECS Corporate Services, LLC's motion for summary judgment (Dkt. No. 57).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel  
Richard Mark Gergel  
United States District Judge

July 6, 2021  
Charleston, South Carolina