# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| The Turtle Factory Building Corporation, ) | C/A. No. 2:19-976-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| ECS Southeast, LLP, ) | |
| ECS Carolinas, LLP, and ) | |
| ECS Corporate Services, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Before the Court is Defendants ECS Southeast, LLP and ECS Carolinas, LLP (collectively "ECS")'s partial motion for summary judgment (Dkt. No. 58).[1] For the reasons set forth below, the Court grants in part and denies in part ECS's motion.

## I.  Background

This case arises out of Plaintiff's purchase of 228 Meeting Street, Charleston, SC 29401 (the "Property") from non-party McGrath Real Estate Holdings, LLC. Plaintiff alleges that, in purchasing the Property, it relied on a property condition assessment report ("PCR") prepared by ECS Carolinas, LLP.[2] *See* (Dkt. No. 58-6). Plaintiff alleges that the PCR contained inaccurate

---

[1] Defendants ECS Southeast, LLP and ECS Carolinas, LLP filed jointly three motions for summary judgment—each treating separate issues related to Plaintiff's claims. *See* (Dkt. Nos. 58, 59, 60). While the Court does not generally permit piecemeal motion practice, Plaintiff has not objected to ECS's filings and the Court further finds that, at this stage of the litigation, it would create additional burden, expense, and delay for the Court to order ECS to reformat and resubmit its motions. The Court will therefore consider the above motions on their respective merits.

[2] ECS Carolinas, LLP changed its name to ECS Southeast, LLP effective January 1, 2017 and the entity know as ECS Carolinas, LLP is no longer active in South Carolina and is a dissolved entity. (Dkt. No. 14).

information about the Property. Plaintiff alleges that it was damaged because of, *inter alia*, its reliance on the PCR. For example, Plaintiff alleges that while the PCR stated that roughly $3,000.00 worth of cosmetic repairs were necessary to the exterior stucco of the Property, after closing Plaintiff "learned that the exterior cladding was not stucco, but rather an Exterior Insulation Finish System and that a $3,500,000.00 strip and reclad was necessary." *See* (Dkt. No. 64 at 2).

Plaintiff brings four causes of action against ECS including: (1) Amalgamation/Alter Ego/Mere Continuation; (2) Negligence/Gross Negligence; (3) Breach of Express and Implied Warranty; and (4) Breach of Contract. (Dkt. No. 1-1).[3]

On January 8, 2021, ECS moved for partial summary judgment on the following grounds:

(1) ECS's liability is limited to $1,000,000.00 per the Limit of Liability provision contained in the Master Services Agreement, which governs the property condition assessment performed for Plaintiff;

(2) The laws of the Commonwealth of Virginia, as specified in the Master Services Agreement, govern the substantive rights of the parties and the causes of action that Plaintiff has asserted against ECS; and

(3) Applying Virginia's source of the duty rule and economic loss rule, Plaintiff is precluded from seeking any recovery in tort from ECS, and any recovery at all as to ECS Carolinas, LLP.

(Dkt. No. 58-1 at 1). Plaintiff opposes ECS's motion. (Dkt. No. 64). ECS filed a reply. (Dkt. No. 77).

ECS's motion is fully briefed and ripe for disposition.

## II.     Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed.

---

[3] On July 6, 2021, the Court granted Defendant ECS Corporate Services, LLC summary judgment on the entirety of Plaintiff's claims. (Dkt. No. 87).

R. Civ. P. 56(a). The Court interprets all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)); *Lilly v. Crum*, No. 2:19-CV-00189, 2020 WL 1879469, at *4 (S.D.W. Va. Apr. 15, 2020) (noting that the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to create a genuine dispute) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

**III. Discussion**

At the heart of ECS's motion is the question of whether Plaintiff is bound by the terms of the Master Services Agreement (the "MSA"), (Dkt. No. 58-8), a contract undisputedly incorporated into ECS's proposal for the PCR, (Dkt. No. 58-11 at 8) ("Proposal for Property Condition Assessment (PCA) and Phase 1 Environmental Site Assessment (ESA)" noting "[o]ur services will be performed *in accordance with the [MSA] between ECS Carolinas, LLP and i3, LLC dated May 18, 2016*") (emphasis added).[4] Plaintiff argues it is not bound by the MSA because i3, LLC ("i3") signed the MSA, not Plaintiff. (Dkt. No. 64 at 5). The parties do not dispute, however, that Plaintiff employed i3 to identify potential investment properties for Plaintiff, *see* Deposition of Rick Campbell, Plaintiff's Rule 30(b)(6) Deponent, (Dkt. No. 58-2 at 8), and preform due diligence on said properties, (*id.* at 16). The parties also do not dispute that the MSA is governed by Virginia law and limits ECS's liability thereunder to $1,000,000.00. (Dkt. No. 58-

---

[4] While Plaintiff states that the PCR "proposal acceptance form . . . at best *attempts* to incorporate the MSA into its terms and conditions," (Dkt. No. 64 at 9) (emphasis added), Plaintiff puts forth no reasoned explanation for why the PCR proposal in-fact fails to incorporate the MSA given the express language cited herein.

3

8 at 15-16). Last, the MSA undisputedly states that its signatories—i3 and ECS—"agree that there are no third party beneficiaries to this Agreement, except that this Agreement and any and all Documents of Service [namely, the PCR] may be relied on by [i3]'s respective investors, affiliates, joint venture partners, consultants, prospective tenants, prospective purchasers and lenders." (*Id.* at 7).

The Court finds that Plaintiff is bound by the terms of the MSA, that ECS's liability thereunder is limited to $1,000,000.00, and that Plaintiff's negligence/gross negligence claim fails as Plaintiff's relationship with ECS is exclusively contractual. Specifically, because the Court finds that i3 is Plaintiff's agent, Plaintiff is bound by the terms of the MSA.

An agency relationship is established by either evidence of actual or apparent authority.[5] *Town of Kingstree v. Chapman*, 405 S.C. 282, 313 (Ct. App. 2013). For agency to exist through actual authority, the principal must consent to and intend for the agent to act on his behalf, and likewise, the agent must accept the authority to act on behalf of the principal. *See* Restatement (Third) of Agency § 1.01 (2006) (explaining agency arises when the principal consents "that the agent shall act on the principal's behalf and subject to the principal's control," and the agent consents to act on the principal's behalf); *see also Peoples Fed. Sav. & Loan Ass'n v. Myrtle Beach Golf & Yacht Club*, 310 S.C. 132, 145 (Ct. App. 1992) ("Agency . . . results from the manifestation of consent by one person to another to be subject to the control of the other and to act on his behalf.").

The test to determine whether an agency relationship exists is whether the purported principal has the right to control the conduct of the alleged agent in the performance of his work

---

[5] Plaintiff does not dispute ECS's assertion that, in considering whether i3 is Plaintiff's agent, South Carolina law governs.

and the way the work is to be done. *Jamison v. Morris*, 385 S.C. 215, 222 (2009); *Newell v. Trident Med. Ctr.*, 359 S.C. 4, 12 (2004) ("The test to determine agency is whether or not the purported principal has the *right to control* the conduct of the alleged agent.") (internal quotation marks omitted). Thus, an agency relationship based on actual authority exists when a purported principal and an alleged agent mutually consent to the principal controlling the agent in the work the agent has agreed to do on the principal's behalf. *Froneberger v. Smith*, 406 S.C. 37, 49-50 (Ct. App. 2013).

As a procedural matter, Plaintiff has conceded that i3 is its agent. In its motion for summary judgment, ECS argues, under a variety of theories, that i3 is Plaintiff's agent. (Dkt. No. 58-1 at 14-21). In its opposition, Plaintiff fails to substantively address or rebut this argument. (Dkt. No. 64 at 11) (stating only that "ECS argues that i3, LLC was [Plaintiff]'s actual agent"). By failing to address this issue in its briefing, Plaintiff concedes ECS's point. *See Kinetic Concepts, Inc. v. Convatec Inc.*, No. 1:08CV00918, 2010 WL 1667285, at *9 (M.D.N.C. Apr. 23, 2010) (string citing cases to this effect and noting that, "in a variety of different contexts, a large number of courts . . . have recognized the general principle that a party who fails to address an issue has conceded the issue").[6]

---

[6] *See, e.g.*, *Eady v. Veolia Transp. Services, Inc.,* 609 F. Supp. 2d 540, 560–561 (D.S.C. 2009) ("The failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action."); *American Registry of Radiologic Technologists v. Bennett,* 655 F. Supp. 2d 944, 946 n. 2 (D. Minn. 2009) ("It is well established that a party concedes an issue by failing to address it in an opposing brief."); *Brand v. North Carolina Dep't of Crime Control and Pub. Safety,* 352 F. Supp. 2d 606, 618 (M.D.N.C.2004) ("In Plaintiff's brief in response to Defendants' motion for summary judgment, Plaintiff does not address ... his hostile work environment claim. By failing to respond, Plaintiff concedes that he has not stated a hostile work environment claim."); *Hamilton v. Cunningham,* 880 F. Supp. 1407, 1412 (D. Colo. 1995) ("Cunningham apparently concedes Plaintiffs' limitations analyses ..., having failed to address either in his brief.").

Further—and more importantly—the Court finds that the undisputed material facts, even viewed in a light most favorable to Plaintiff, the non-moving party, demonstrate i3 is Plaintiff's agent. *See* (Dkt. No. 58-2 at 16) (Campbell testifying that Plaintiff hired i3 to conduct due diligence on Plaintiff's behalf and that Plaintiff intended to rely on that diligence); Deposition of Jude Peck, i3's Rule 30(b)(6) Deponent, (Dkt. No. 58-3 at 8, 11, 15, 17) (noting i3 signed the MSA's Proposal Acceptance Form "on behalf of the Turtle Factory Building Corp." and that Peck "had authority to sign the proposal acceptance form on behalf of the Turtle Factory Building Corp."); Deposition of Kevin Heaton, Plaintiff's Rule 30(b)(6) Deponent, (Dkt. No. 58-5 at 11) ("Q: How did the Turtle Factory come to hire ECS to perform the PCA in a phase one assessment? A: Through i3. At the recommendation of i3. Q: Do you know if the Turtle Factory considered any other companies or engineering firms to perform the PCA in phase one? A: I'm not aware of any."); *Froneberger*, 406 S.C. at 49-50 ("an agency relationship based on actual authority exists when a purported principal and an alleged agent mutually consent to the principal controlling the agent in the work the agent has agreed to do on the principal's behalf"); *see also* (Dkt. No. 58-1 at 13 n.1) ("If the Turtle Factory contends that it is not bound to the terms of the . . . Proposal and corresponding Master Services Agreement, then it has no legal basis to assert any claims against ECS."); (Dkt. No. 1-1 ¶¶ 17, 58) (alleging "Plaintiff and ECS entered into a valid and binding contract whereby ECS was to perform certain services for the Plaintiff").

Given Plaintiff is bound by the MSA and given the MSA is governed by Virginia law, (Dkt. No. 58-8 at 16) ("This Agreement including all matters related to performance and remediation shall be interpreted according to the substantive Laws of the Commonwealth of

Virginia"), the Court finds that Plaintiff's negligence/gross-negligence claim must be dismissed as the relationship between Plaintiff and ECS is solely contractual.[7]

It is well-settled under Virginia law that, "[i]n determining whether a cause of action sounds in contract or tort, the source of the duty violated must be ascertained." *Richmond Metro. Auth. v. McDevitt St. Bovis*, 256 Va. 553, 558 (Va. 1998). The Supreme Court of Virginia explains the distinction between contract and tort claims as follows:

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.

*Id.* When pursuing a negligence claim, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Foreign Mission Bd. v. Wade*, 242 Va. 234, 241 (Va. 1991) (*citing Spence v. Norfolk & W. R.R. Co.*, 92 Va. 102 (Va. 1895)).

"The primary consideration underlying tort law is the protection of persons and property from injury, while the major consideration underlying contract law is the protection of bargained for expectations." *Filak v. George*, 267 Va. 612, 618 (Va. 2004). Therefore, "when a plaintiff alleges and proves nothing more than disappointed economic expectations assumed only by agreement, the law of contracts, not the law of torts, provides the remedy for such economic

---

[7] In its response in opposition to ECS's motion for summary judgment, Plaintiff does not contest that the MSA is governed by Virginia law or that ECS permissibly limited its liability thereunder to $1,000,000.00. *See* (Dkt. No. 64 at 11-15). Nor does Plaintiff contest ECS's assertion—an assertion the Court finds to be true and which the Court now discusses—that Virginia's source of duty rule precludes Plaintiff's claims for negligence/gross-negligence.

losses." *Id.* "No matter the alleged harm, tort liability cannot be imposed upon a contracting party for failing to do a contractual task when no common-law tort duty would have required him to do it anyway — and thus, as the maxim restates, in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 82 (Va. 2019) (internal citation omitted).

Here, ECS's duties toward Plaintiff arise solely out of a contract—namely the MSA. As no common law duty exists between ECS and Plaintiff, the Court must grant ECS summary judgment on Plaintiff's claim for negligence/gross negligence.[8] *See Bartlett v. Roberts Recapping, Inc.*, 207 Va. 789, 793 (1967) (noting there can be no actionable negligence where there is no breach of a duty "to take care for the safety of the person or property of another"); *Tingler*, 298 Va. at 82 ("No matter the alleged harm, tort liability cannot be imposed upon a contracting party for failing to do a contractual task when no common-law tort duty would have required him to do it anyway — and thus, as the maxim restates, 'in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract'").[9]

---

[8] In opposition, Plaintiff argues that, if the Court finds the MSA binding on it, a venue provision in the MSA requires the Court remand this action to state court. Plaintiff also argues that, assuming the MSA is binding on it, ECS cannot invoke the MSA because it "materially breached" the MSA. (Dkt. No. 64 at 12-15). The Court has considered both arguments as presented in Plaintiff's brief and rejects them as unconvincing. *See Wiley v. United Parcel Serv., Inc.*, 11 F. App'x 176, 178 (4th Cir. 2001) (noting "a party seeking to invoke § 1445(c) must object to removal within thirty days after the filing of a notice of removal").

[9] ECS also argues that, under Virginia's economic loss rule, ECS Carolinas, LLP must be dismissed because Plaintiff is not in privity with it. (Dkt. No. 58-1 at 25). The Court rejects the argument. As Plaintiff notes, "ECS Carolinas, LLP is a party to every written document that could potentially be construed as a contract" and, therefore, "ECS cannot argue a lack of privity exists between ECS Carolinas, LLP and the Turtle Factory." (Dkt. No. 64 at 12); *see also* (*id.*) (arguing

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** ECS Southeast, LLP and ECS Carolinas, LLP's partial motion for summary judgment (Dkt. No. 58). The Court **GRANTS** ECS Southeast, LLP and ECS Carolinas, LLP's motion for summary judgment as to Plaintiff's negligence/gross negligence claim. The Court further **GRANTS** ECS Southeast, LLP and ECS Carolinas, LLP's motion to the extent that the Court finds the MSA is governed by Virginia law and that liability thereunder is limited to $1,000,000.00. ECS Southeast, LLP and ECS Carolinas, LLP's motion is otherwise **DENIED.**

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

July 9, 2021
Charleston, South Carolina

---

that "ECS Southeast, LLP assumed the liability of ECS Carolinas, LLP and thus it must remain as a party to this action").