# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| The Turtle Factory Building Corporation, ) | C/A. No. 2:19-976-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| ECS Southeast, LLP, ) | |
| ECS Carolinas, LLP, and ) | |
| ECS Corporate Services, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Before the Court is Defendants ECS Southeast, LLP and ECS Carolinas, LLP (collectively "ECS")'s motion for summary judgment based on lack of causation. (Dkt. No. 60).[1] For the reasons set forth below, the Court denies ECS's motion.

## I.  Background

This case arises out of Plaintiff's purchase of 228 Meeting Street, Charleston, SC 29401 (the "Property") from non-party McGrath Real Estate Holdings, LLC. Plaintiff alleges that, in purchasing the Property, it relied on a property condition assessment report ("PCR") prepared by ECS Carolinas, LLP.[2] *See* (Dkt. No. 60-6). Plaintiff alleges that the PCR contained inaccurate

---

[1] Defendants ECS Southeast, LLP and ECS Carolinas, LLP filed jointly three motions for summary judgment—each treating separate issues related to Plaintiff's claims. *See* (Dkt. Nos. 58, 59, 60). While the Court does not generally permit piecemeal motion practice, Plaintiff has not objected to ECS's filings and the Court further finds that, at this stage of the litigation, it would create additional burden, expense, and delay for the Court to order ECS to reformat and resubmit its motions. The Court will therefore consider the above motions on their respective merits.

[2] ECS Carolinas, LLP changed its name to ECS Southeast, LLP effective January 1, 2017 and the entity know as ECS Carolinas, LLP is no longer active in South Carolina and is a dissolved entity. (Dkt. No. 14).

information about the Property.  Plaintiff alleges that it was damaged because of, *inter alia*, its reliance on the PCR.  For example, Plaintiff alleges that while the PCR stated that roughly $3,000.00 worth of cosmetic repairs were necessary to the exterior stucco of the Property, after closing Plaintiff "learned that the exterior cladding was not stucco, but rather an Exterior Insulation Finish System ["EIFS"] and that a $3,500,000.00 strip and reclad was necessary." *See* (Dkt. No. 75 at 2).

Plaintiff brings four causes of action against ECS including: (1) Amalgamation/Alter Ego/Mere Continuation; (2) Negligence/Gross Negligence; (3) Breach of Express and Implied Warranty; and (4) Breach of Contract. (Dkt. No. 1-1).[3]

**II.     Procedural History**

On July 9, 2021, the Court granted in part and denied in part ECS's motion for partial summary judgment. (Dkt. No. 89).  The Court found that i3, LLC was Plaintiff's agent, that i3 signed the Master Services Agreement ("MSA") with ECS on behalf of Plaintiff, and that ECS's proposal for the PCR incorporated the MSA—a contract governed by Virginia law and which limited ECS's liability thereunder to $1,000,000.00.  The Court further found that Plaintiff was bound by the terms of the MSA and dismissed Plaintiff's negligence/gross negligence claim against ECS on the basis that the relationship between Plaintiff and ECS was purely contractual.

Now before the Court is ECS's motion for summary judgment based on lack of causation. (Dkt. No. 60).  Plaintiff opposes ECS's motion.  (Dkt. No. 75).  ECS filed a reply. (Dkt. No. 79).

ECS's motion is fully briefed and ripe for disposition.

---

[3] On July 6, 2021, the Court granted Defendant ECS Corporate Services, LLC summary judgment on the entirety of Plaintiff's claims. (Dkt. No. 87).

### III. Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court interprets all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)); *Lilly v. Crum*, No. 2:19-CV-00189, 2020 WL 1879469, at *4 (S.D.W. Va. Apr. 15, 2020) (noting that the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to create a genuine dispute) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

### IV. Discussion

ECS argues that Plaintiff cannot establish a causal connection between ECS's alleged breach of the standard of care and its injuries. (Dkt. No. 60-1 at 9-15). Specifically, ECS notes that Plaintiff did not designate an expert to opine on "when and how the water damage necessitating the repairs to the [Property] occurred." (*Id.* at 10) (emphasis removed). ECS argues that an inference by a jury that ECS caused Plaintiff's injuries would be based on mere speculation.

In response, Plaintiff argues that "[t]he 'causation' is that ECS's negligence caused the Plaintiff to purchase a building that was clad with EIFS, which is rife with substantial problems. Had ECS met the standard of care and/or performed what it promised to do in its proposal, the Plaintiff could have (a) required the building owner to make repairs prior to closing; (b) negotiated a reduction in the purchase price to cover the repairs; or (c) walked away from the transaction."

3

(Dkt. No. 75 at 8); (*Id.* at 13) (arguing the record "establishes a genuine issue of material fact . . . as to whether ECS's negligence was a proximate cause of Plaintiff's injury—*i.e.*, the purchase of the [Property] for $11,750,000.00 which contained defects negligently omitted from ECS's PCR").

"The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619 (2004). Implicit in every contract of professional employment is the professional's duty to exercise the care of those ordinarily skilled in the business. *O'Connell v. Bean*, 263 Va. 176, 180-81 (2002).

"Engineering, like architecture, medicine, and automotive transmission design, is in most instances sufficiently technical to require expert testimony to establish the standard of care and whether there has been any departure from that standard." *See William H. Gordon Assocs. v. Heritage Fellowship*, 291 Va. 122, 142 (2016); *Nelson v. Commonwealth*, 235 Va. 228, 236 (1988) (architecture) (citing *Bly v. Rhoads*, 216 Va. 645, 650-51 (1976) (medical malpractice); *Ford Motor Co. v. Bartholomew*, 224 Va. 421, 430 (1982) (automotive transmission design)). The expert testimony must "establish the appropriate professional standard, ... establish a deviation from that standard, and ... establish that such a deviation was the proximate cause of the claimed damages." *Seaward Int'l, Inc. v. Price Waterhouse*, 239 Va. 585, 592 (1990).

Here, viewing all facts in a light most favorable to Plaintiff, the non-moving party, the Court finds that a jury question exists as to whether ECS's purported professional negligence (i.e. its alleged breach of contract) proximately caused Plaintiff's injuries. Plaintiff designated an expert to opine on whether ECS violated "the standard of care by not identifying the exterior cladding as EIFS." *See* Deposition of Brian DuChene, (Dkt. No. 60-8 at 4-5) ("Q: When you were contacted, what were you asked to do? A: [T]here was a question about whether or not the EIFS

4

exterior should have been identified during the [PCR]. And so that was my understanding of what my objective was. . . . I concluded that EIFS was accessible, readily observable, and . . . should have been identified as the predominant cladding on this building."). Plaintiff designated another expert to opine on the scope of repairs allegedly required for the building due to water damage. (Dkt. No. 60-1 at 7). And Plaintiff designated a third expert, Scott Harvey, AIA, who opined, in part, on the differences between stucco and EIFS and on where "water had entered the building." (Dkt. No. 60-1 at 7). Harvey testified:

> A: The control joints or expansion joints in the cladding system have broken open in several locations and have allowed water to enter inboard of the cladding.
>
> Q: What has led or contributed to the breaking open of those joints?
>
> A: That's the part where I have not gone through the analysis to figure out if it was simply just building expansion/contraction or if it was age associated.

(Dkt. No. 60-15 at 4, 8) (further testifying that while Harvey "d[id not] have a way of dating [the water damage,] [i]*t had been going on for a while*, but I don't know how long a while is") (emphasis added)[4]; (*Id.* at 6-7) (testifying that water intrusion can affect both stucco and EIFS but that stucco "may have a longer life expectancy or useful life than EIFS" because "its durability, ability to take impact a little bit better"); (Dkt. No. 75-3 at 5) (noting that in an EIFS wall there is "no redundancy . . . when it comes to water management. As a result, these systems require a much higher level of maintenance"); (*Id.*) (further noting "water intrusion has been noted inside the

---

[4] Attached to ECS's opposition is an affidavit—created and signed by Harvey after his deposition—wherein Harvey states that, although he cannot "definitively" state the date on which the water intrusion began at the Property, he can, "to a reasonable degree of architectural certainty, affirm . . . the water damage began at least two years prior to my investigation, and likely earlier." (Dkt. No. 75-9) (emphasis removed). In denying ECS's motion, the Court has not considered this affidavit. *See Judy v. Mako Marine Int'l, Inc.*, Civil Action No. 2:18-cv-1843-RMG, 2019 U.S. Dist. LEXIS 179572, at *3 (D.S.C. Oct. 17, 2019) (noting "it is well-settled that a party cannot avoid summary judgment by submitting an affidavit contradicting a witness's prior testimony") (citing *Rohbough v. Wyeth Labs, Inc.*, 916 F.2d 970, 975 (4th Cir. 1990)).

5

conditioned spaces of the building for some time" and that "it is apparent that attempts have been made to stop this water intrusion"). Further, and as ECS admits, the seller of the Property made "misleading statements regarding the exterior cladding and the condition of the building," (Dkt. No. 60-1 at 4) (internal quotation marks omitted), including the omission of "an *extensive history of leaks in the building*," (*id.*) (emphasis added)—facts which bolster the reasonable inference that water damage caused by EIFS existed around the time ECS issued the PCR and that ECS breached its duty by failing to identify EIFS as the cladding of the Property.

Considering the above, the Court finds that a question of material fact exists as to whether Plaintiff would have "purchased the building" but for ECS's failure to identify EIFS as the cladding of the Property. (Dkt. No. 75 at 6, 8) (arguing "ECS . . . misapprehends the nature of Plaintiff's claims against it. Plaintiff has not alleged that ECS caused the water damage to the Subject Building. Rather, ECS was charged with investigating the building and providing a property condition report upon which the Turtle Factory could rely in its negotiation and purchase of the Subject Building."); (*Id.* at 8) ("The question of whether or not the Turtle Factory would have purchased the building, but for ECS's negligence/gross negligence, is not . . . one which requires opinion testimony from an expert."). *Cf. Zellars v. NexTech Ne., LLC*, 895 F. Supp. 2d 734, 739 (E.D. Va. 2012) (noting that, "in *toxic tort cases*, relevant and reliable expert testimony is required to prove (1) 'that a particular chemical is harmful to humans generally,' i.e., general causation, and (2) 'that exposure to the potentially harmful agent actually caused [the plaintiff's injury],' i.e., specific causation") (emphasis added).

Accordingly, ECS's motion is denied.[5]

---

[5] ECS also argues that alleged misrepresentations by the seller of the Property serve as a superseding and intervening cause which wholly alleviates ECS of any liability. Having considered ECS's argument, the Court finds it unconvincing—especially given the undisputed fact

V. **Conclusion**

For the foregoing reasons, the Court **DENIES** ECS Southeast, LLP and ECS Carolinas, LLP's motion for summary judgment based on lack of causation (Dkt. No. 60).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

July 13, 2021
Charleston, South Carolina

---

that Plaintiff had the right to rely on the PCR in deciding whether to purchase the Property. *See Coleman v. Blankenship Oil Corp.*, 221 Va. 124, 131, 267 S.E.2d 143, 147 (1980) ("In order to relieve a defendant of liability for his negligence, negligence intervening between the defendant's negligence and the injury '*must so entirely supersede the operation of the defendant's negligence that it alone, without the defendant's (negligence contributing) thereto in the slightest degree, produces the injury*.'") (citing *Richmond v. Gay*, 103 Va. 320, 324, 49 S.E. 482, 483 (1905)) (emphasis added).