# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| The Turtle Factory Building Corporation, ) | C/A. No. 2:19-976-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| ECS Southeast, LLP, ) | |
| ECS Carolinas, LLP, and ) | |
| ECS Corporate Services, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Before the Court is Defendants ECS Southeast, LLP and ECS Carolinas, LLP (collectively "ECS")'s motion for summary judgment as to Plaintiff's lost revenue damages. (Dkt. No. 59).[1] For the reasons set forth below, the Court denies ECS's motion.

## I.  Background

This case arises out of Plaintiff's purchase of 228 Meeting Street, Charleston, SC 29401 (the "Property") from non-party McGrath Real Estate Holdings, LLC. Plaintiff alleges that, in purchasing the Property, it relied on a property condition assessment report ("PCR") prepared by ECS Carolinas, LLP.[2] *See* (Dkt. No. 59-1 at 4-5). Plaintiff alleges that the PCR contained

---

[1] Defendants ECS Southeast, LLP and ECS Carolinas, LLP filed jointly three motions for summary judgment—each treating separate issues related to Plaintiff's claims. *See* (Dkt. Nos. 58, 59, 60). While the Court does not generally permit piecemeal motion practice, Plaintiff has not objected to ECS's filings and the Court further finds that, at this stage of the litigation, it would create additional burden, expense, and delay for the Court to order ECS to reformat and resubmit its motions. The Court will therefore consider the above motions on their respective merits.

[2] ECS Carolinas, LLP changed its name to ECS Southeast, LLP effective January 1, 2017 and the entity know as ECS Carolinas, LLP is no longer active in South Carolina and is a dissolved entity. (Dkt. No. 14).

inaccurate information about the Property.  Plaintiff alleges that it was damaged because of, *inter alia*, its reliance on the PCR.  For example, Plaintiff alleges that while the PCR stated that roughly $3,000.00 worth of cosmetic repairs were necessary to the exterior stucco of the Property, after closing Plaintiff "learned that the exterior cladding was not stucco, but rather an Exterior Insulation Finish System ["EIFS"] and that a $3,500,000.00 strip and reclad was necessary." *See* (Dkt. No. 66 at 2).  In pertinent part, Plaintiff seeks $620,758.50 in lost revenue ("Lost Revenue Damages") associated with Plaintiff's alleged inability to rent the fourth floor of the Property. (Dkt. No. 59-1 at 4).

Plaintiff brings four causes of action against ECS including: (1) Amalgamation/Alter Ego/Mere Continuation; (2) Negligence/Gross Negligence; (3) Breach of Express and Implied Warranty; and (4) Breach of Contract. (Dkt. No. 1-1).[3]

## II.     Pertinent Procedural History

On July 9, 2021, the Court granted in part and denied in part ECS's motion for partial summary judgment. (Dkt. No. 89).  The Court found that i3, LLC was Plaintiff's agent, that i3 signed the Master Services Agreement ("MSA") with ECS on behalf of Plaintiff, and that ECS's proposal for the PCR incorporated the MSA—a contract governed by Virginia law and which limited ECS's liability thereunder to $1,000,000.00.  The Court further found that Plaintiff was bound by the terms of the MSA and dismissed Plaintiff's negligence/gross negligence claim against ECS on the basis that the relationship between Plaintiff and ECS was purely contractual.

---

[3] On July 6, 2021, the Court granted Defendant ECS Corporate Services, LLC summary judgment on the entirety of Plaintiff's claims. (Dkt. No. 87).

Now before the Court is ECS's motion for summary judgment as to Plaintiff's Lost Revenue Damages. (Dkt. No. 59). Plaintiff opposes ECS's motion. (Dkt. No. 66). ECS filed a reply. (Dkt. No. 78).

ECS's motion is fully briefed and ripe for disposition.

### III.  Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court interprets all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold*, *Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)); *Lilly v. Crum*, No. 2:19-CV-00189, 2020 WL 1879469, at *4 (S.D.W. Va. Apr. 15, 2020) (noting that the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to create a genuine dispute) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

### IV.  Discussion

ECS argues that it is entitled to summary judgment on Plaintiff's claim for Lost Revenue Damages. ECS argues that because Plaintiff did not designate an expert to testify as to Lost Revenue Damages, such a claim necessarily fails. (Dkt. No. 59-1 at 7-10). ECS does not cite a single case to support this argument. *See* (*id.*). ECS also argues that Plaintiff's Lost Revenue Damages are speculative. (*Id.* at 15) ("In this case, The Turtle Factory has not produced any evidence demonstrating the basis for its 'lost profits,' other than referring ECS to the December 12, 2018 letter of Mr. [Reid] Davis. Further, any such evidence would be entirely speculative. As

3

a new owner of the Property, The Turtle Factory does not have historical data to provide a basis for any Lost Revenue Damages, and as a new business, its success 'depends upon future bargains, the status of the market, and too many other contingencies to furnish a safeguard in fixing the measure of damages.' Any Lost Revenue Damages are too speculative to be recoverable.") (*citing Mullen v. Brantley*, 213 Va. 765, 768 (1973)). Alternatively, ECS argues that the testimony of Reid Davis, an employee of Lee & Associates Charleston, LLC and Lee & Associates Charleston PM, LLC, (collectively "Lee")[4] must be excluded as Davis is an expert whose report was not properly disclosed in compliance with Fed. R. Civ. P. 26(a)(2)(B). (*Id.* at 9, 11-14).

In opposition, Plaintiff argues that Davis was not hired as an expert witness nor otherwise solicited for expert testimony. (Dkt. No. 66 at 5). Plaintiff further argues that Davis's testimony regarding Lost Revenue Damages are permitted under Fed. R. Evid. 701 and are not speculative. *See* (*id.* at 5-7); (Dkt. No. 59-15 at 2) (letter from Davis to i3 regarding Lee's "unsuccessful[]" attempt to lease the fourth floor of the Property, noting that "we have been forced to offer the space far below market (current tenants are actively paying gross rates of over $38.00 PSF) rates"). Plaintiff further argues that, to the extent the Court finds Davis is an expert who should have disclosed a report under Fed. R. Civ. P. 26(a)(2)(B), there would be no surprise or bias to ECS should Plaintiff be allowed to rely on Davis's testimony.

The Court denies ECS's motion. As noted above, ECS cites no case law holding that Plaintiff is required to proffer expert testimony to establish its Lost Revenue Damages. To the contrary, Davis's testimony is permissible under Fed. R. Evid. 701. *See* Fed. R. Evid. 701 (opinion testimony by a lay witness admissible if it is (a) rationally based upon the witness's perception;

---

[4] Lee provides property management and leasing services to Plaintiff for the Property. (Dkt. No. 59-13 at 4).

4

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Fed. R. Evid. 702); (Dkt. No. 66-7 at 6-9) (Davis testimony describing efforts to lease the fourth floor of the Property and describing documents—such as leasing reports—apparently relied on by Davis in drafting the December 12, 2018 letter to i3 describing difficulties in leasing said floor); (Dkt. No. 78-1 at 3-4) (Davis testimony describing operating costs associated with the Property); *Steves & Sons Inc. v. Jeld-Wen, Inc.*, No. 3:16cv545, 2018 U.S. Dist. LEXIS 5061, at *4-5 (E.D. Va. Jan. 10, 2018) (noting "[t]he modern trend favors the admission of opinion testimony [under Rule 701], provided that it is well founded on personal knowledge as distinguished from hypothetical facts," and the opinion is offered "on the basis of relevant historical or narrative facts that the witness has perceived") (quoting *MCI Telecomms. Corp. v. Wanzer*, 897 F.2d 703, 706 (4th Cir. 1990)); *Lord & Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 575 (4th Cir. 2017) (permitting a company official to estimate future profits and losses as a lay witness where estimates were based on "personal experience"); *accord Von der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 862 (7th Cir. 2009) ("In the realm of lost profits, lay opinion testimony is allowed . . . where the witness bases his opinion on particularized knowledge he possesses due to his position within the company."); *Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 551-52 (5th Cir. 2005) ("Rule 701 does not exclude testimony by corporate officers or business owners on matters that relate to their business affairs, such as industry practices and pricing."); *see also* Fed. R. Evid. 701, Committee Notes on Rules—2000 Amendment ("[M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an . . . expert." (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175-76 (3d Cir. 1993))). Last, while ECS cites cases which hold that damages cannot be

"contingent, speculative, or uncertain," (Dkt. No. 78 at 4) (citing *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154 (2009)), ECS does not convincingly demonstrate that Davis merely speculates as to the Lost Revenue Damages. *See* (Dkt. No. 66-7 at 6-9) (describing efforts to lease the fourth floor of the Property and describing documents relied on by Davis in drafting his December 12, 2018 letter); *Goldstein v. Kaestner*, 243 Va. 169, 172-73 (1992) (distinguishing *Mullen*, 213 Va. at 769-69, and noting that, in determining whether future profits are speculative, "[t]he issue . . . is not whether [a business is] under new ownership. Rather, it is whether the changes in operation at that time created an essentially different business"). *Cf. MCI Telecomms. Corp.*, 897 F.2d at 706 (bookkeeper's testimony about company's likely profits admissible because it was based on company records within her control and her "personal knowledge and perception" as an accountant); *Lord & Taylor*, 849 F.3d at 575-76 (testimony projecting store construction costs admissible where witness drew estimate from "on-the-job experience," including "the more than 50 redesign projects he ha[d] overseen"); *Lightning Lube*, 4 F.3d at 1175-77 (company's owner could testify about future lost profits and harm to value of company, despite need for some predictions about business's performance, given his past experience with business's contracts, operating costs, and competition).

      Accordingly, ECS's motion is denied.

## V. Conclusion

For the foregoing reasons, the Court **DENIES** ECS Southeast, LLP and ECS Carolinas, LLP's motion for summary judgment as to Plaintiff's lost revenue damages (Dkt. No. 59).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel<br>
Richard Mark Gergel<br>
United States District Judge

July 19, 2021
Charleston, South Carolina